<u>*NOT FOR PUBLICATION*</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ACHIEVE 24 FITNESS LIMITED LIABILITY COMPANY,

                Plaintiff,

v.

ALLOY PERSONAL TRAINING SOLUTIONS, LLC; JOHN DOES 1-10 (names(s) being fictitious for individuals whose identities are currently unknown); and ABC ENTITIES 1-10 (names being fictitious for corporate or other legal entities whose identities currently remain unknown),

                Defendant.

Civil Action No. 21-12085 (GC)

**OPINION**

<u>**CASTNER, District Judge**</u>:

       This matter has been opened to the Court by a motion to dismiss brought by Defendant Alloy Personal Training Solutions, LLC ("Defendant" or "Alloy"). Alloy seeks dismissal of Plaintiff Achieve 24 Fitness Limited Liability Company's ("Plaintiff" or "Achieve") First Amended Complaint ("FAC"), which asserts claims under the New Jersey Franchise Practices Act ("NJFPA"), N.J. Stat. Ann. § 56:10-1 *et. seq.*; the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1; and common law fraud, trademark infringement, unfair competition, rescission, and breach of duty of good faith and fair dealing, arising from Alloy's alleged infringing and improper use of Achieve's trademarks, tradename, and goodwill.

       For the reasons explained in this Opinion, Alloy's motion to dismiss the FAC is **GRANTED** in part and **DENIED** in part. Specifically, Alloy's motion is denied as to Achieve's claims for trademark infringement (Count One) and unfair competition (Count Two). Alloy's

motion to dismiss is granted, however, as to Achieve's claims for violation of the NJFPA (Count Three), violation of the NJCFA (Count Four), fraud (Count Five), rescission (Count Six), and breach of duty of good faith and fair dealing (Count Seven).

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

The relevant facts are derived from the FAC and assumed true for the purposes of this motion.

### A.   Background Related to Achieve and its Purported Trademark

According to Achieve, STRONG TOGETHER® is a "health and fitness business that is well-known in the industry and community in the State of New Jersey and beyond." (FAC, ¶ 18.) The STRONG TOGETHER® brand (the "Mark") originated with its current owner, Benjamin Krymis ("Mr. Krymis"), as early as May 16, 2015, and Achieve has used the Mark in connection with several physical locations, including Strong Together Hackettstown, Strong Together Chester, Strong Together Roxbury, Strong Together Byram, Strong Together Chelsea and Strong Together MontCo in Pennsylvania. (*Id.* at ¶ 19.) Indeed, Achieve alleges that on May 16, 2015, Mr. Krymis obtained the "Strongtogetherfitness.com" domain, and that it currently owns and maintains multiple websites, including "www.strongtogetherfitness.com," "www.strongtogetherbyram.com," "www.strongtogetherchester.com," as well as STRONG TOGETHER® social media sites on Facebook and Instagram. (*Id.* at ¶¶ 20, 24.)

---

[1]   "Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Here, the Court considers the parties' License Agreement and Alloy's Petition for Cancellation, as those terms are defined herein, under the exception to Rule 12, because those documents were expressly referenced in the FAC.

Mr. Krymis, applied for U.S. federal trademark registration of the Mark on July 28, 2016, and the Mark was registered on January 16, 2018, in connection with personal training services. (*Id.* at ¶ 22.). In December 2018, Mr. Krymis filed a Certificate of Formation for "Strong Together International, LLC" in New Jersey. (*Id.* at ¶ 23.)

**B.    Achieve's Relationship with Alloy**

Alloy "developed and owns a proprietary personal training fitness system, which includes an operations and training manual, forms and documents used to support the system, training videos, quarterly work-outs, the program design card, an exercise video library, downloadable programs, and video support for program demonstrations (collectively, the 'System')." (*Id.* at ¶¶ 30, 48.) According to Achieve, Alloy regularly portrayed itself as a franchise that would "enhance returns, profits, and business results for licensees" of the System beginning as early as March 2014. (*Id.* at ¶ 29.)

On September 28, 2016, Achieve learned about the System, and it contacted Alloy to discuss using its services for implementation of a fitness program at some of Achieve's locations. (*Id.* at ¶ 40.) Achieve alleges that during its first email inquiry with Alloy, Plaintiff used, and Defendant was on notice of, Plaintiff's STRONG TOGETHER® trademark, because it was used in Mr. Krymis' email signature. (*Id.* at ¶ 41.) Further, in response to Achieve's initial inquiry, Tony Chemer, a Sales Project Manager for Alloy, allegedly wrote:

> I think the best option for you is the programming option. We would still help you set up the layering and outline 30 - Day Marketing for trials. There would only be one initial $1500 fee to cover both facilities which also includes a full day of training on site. Travel expenses are billed after the training day. We do require all facilities to be licensed so it would be $250/month for each and drops to $200/month for 3 and beyond. They each get their own online portal to store all the program design cards and assessment data on your clients.

(*Id.* at ¶ 42.) On September 30, 2016, Mr. Chemer also purportedly wrote:

It was great talking with you guys today! I know we can help you create better retention and increase personal training in your Achieve 24 locations with our systems! You need consistent training across both of your facilities to be successful and we have the system to help you do that.

In addition to the options I had sent you we have a programing only option with a second day of training (additional $1500 for second day) to help you outline the sales process. In your case I think this might be the best option. We spend a full say [sic] outlining the sales process to get more of your existing and new members into training. You just don't get the online resources and ongoing coaching but its [sic] much more affordable than paying $500/month for each club the full system. I'll email you both the programing only and the option including a second day [o]f training to take a look at in a separate Docusign agreement. Don't panic when you see the equipment list. This is the full list to handle 300-400 training clients, 1/4 of this is enough to get started.

(*Id.* at ¶ 43.) Several days later, on October 03, 2016, Alloy allegedly represented that Achieve was not required to use Defendant's brand or mark, and according to Achieve, Alloy verbally represented that Achieve would "earn [its] investment back in 2 months," double its revenue, and provided numerous examples of other gyms using the System that were making "a lot" of money. (*Id.* at ¶¶ 33, 46.)

## C.    The License Agreement and Alloy's Purported Misrepresentations

Achieve alleges that on October 5, 2016, Achieve and Mr. Krymis entered into a License and Consulting Agreement (the "License Agreement") with Alloy for Achieve's use of the System based, in part, on the representations made during the parties' discussions. (*Id.* at ¶ 48.) Specifically, in exchange for a $1,500 start-up fee and a $250 monthly fee per location (for up to two locations), Achieve was provided: (1) System Training materials, (2) System Design Principles, (3) Standard Equipment List, and (4) advice with respect to programs. (*Id.* at ¶¶ 50-51; *see also* Certification of William F. O'Connor, Jr., Esq. in Support of Defendant's Motion to Dismiss ("O'Connor Cert."), Ex. B ("License Agreement") at § 2 and Schedule B.) The License Agreement also contains the following provisions that are relevant to the instant motion:

5. <u>Intellectual Property</u> - Licensee [Plaintiff] acknowledges and agrees that its use of the "Intellectual Property" of Licensor [Defendant] (meaning the trademarks, trade secrets, trade dress, any patents, the Confidential Information and copyrighted information of Licensor or its affiliates that Licensee is entitled to use under this Agreement) and any goodwill established by that use are exclusively for Licensor's benefit and that this Agreement does not confer any goodwill or other interests in the Intellectual Property upon Licensee (other than the right to operate the System under this Agreement). All provisions of this Agreement relating to a trademark apply to any additional proprietary trade and service marks Licensor authorizes Licensee to use. Licensee acknowledges and agrees that it shall have no right, title or interest in or to the Intellectual Property; nothing in this Agreement shall be construed as an assignment to Licensee of any right, title or interest in or to the Intellectual Property; except as expressly set forth herein, all right, title and interest relating to the Intellectual Property are expressly reserved by Licensor; and Licensee shall not acquire any right in or to any of the Intellectual Property, or in any goodwill generated thereby, by virtue of any use of the Intellectual Property. To the extent that Licensee is deemed to have retained or otherwise possess any right, title and/or interest in and to all or any portion of the Intellectual Property, Licensee agrees to, and hereby do irrevocably assign, transfer and convey same to Licensor, including, without limitation, any trademark, copyright and any other intellectual property or proprietary rights, in and to the Intellectual Property and without any restrictions, limitations or reservations, world-wide and royalty-free, upon the effective date of creation thereof, including, without limitation, any past, present or future goodwill arising from the use thereof, any right, title or interest in and to all or any portion of the Intellectual Property, which may have been obtained by Licensee or inured to the benefit of Licensee, or which may have allegedly vested in Licensee as a result of the exercise of any rights or licenses under this Agreement, and all federal, state and common law rights therein; said rights, title and interest to be held and enjoyed by Licensor and for its own use and benefit as fully and entirely as the same would have been held and enjoyed by Licensee if such assignment, transfer and conveyance had not been made. Licensee shall execute any and all instruments reasonably requested by Licensor to accomplish or confirm the foregoing. In the event Licensee is not available to execute such instruments, applications, assignments or other documents, Licensee hereby appoints the President or Secretary of the Licensor to serve as power of attorney for the purpose of executing such documents. Any such assignment, transfer or conveyance shall be without any further consideration other than the mutual covenants and considerations of this Agreement.

. . . .

7. <u>Non-Competition</u> - During the Term hereof and for two (2) years after the termination of this Agreement, Licensee agrees that it shall not, directly or indirectly worldwide (which Licensee acknowledges is the geographic area in which Licensor does business), compete with Licensor by selling or licensing any personal training fitness system similar to the System or providing related services

similar to the Services, including by owning, managing, operating, controlling, being employed by or participating in the ownership, management, operation or control of, or being connected in any manner with, or having any other direct or indirect financial interest in, any business, firm, person, partnership, corporation, enterprise or concern which is engaged in any business of the type or character competitive with Licensor.

. . . .

13. Business Management - Licensee agrees and acknowledges that: (i) Licensor will have no responsibility or liability for the day-to-day operations of the Location or the management of its business, including without limitation, ensuring the safety and security of Licensee's customers or employees; (ii) Licensee shall independently control the operation of its business and the results of its operations will depend exclusively on the business acumen and promotional and managerial efforts of Licensee; and (iii) Licensor shall have no responsibility or liability for or control or supervision of Licensee's employment practices.

. . . .

15. Miscellaneous . . . (d) *Entire Agreement*. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof. No agreements or representations, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party which are not set forth expressly in this Agreement. . . .

(O'Connor Cert., License Agreement at §§ 5, 7, 13, 1.)

According to Achieve, however, Alloy made certain misrepresentations in connection with the License Agreement and the parties' relationship. First, Achieve alleges that Alloy misrepresented that the programming would enhance returns, profits, and business results. (*Id.* at ¶¶ 129-31, 139). Second, Achieve alleges that Alloy misrepresented that Achieve would not need to use Alloy's name or brand for success. (*Id.* at ¶¶ 137-38.) Rather, unbeknownst to Achieve, and contrary to prior purported representations, Achieve claims that Alloy included an assignment provision in the License Agreement, which assigned Plaintiff's Mark and name to Alloy. (*Id.* at ¶ 143.) Third, Achieve alleges that Alloy made certain misrepresentations and/or omissions of material fact concerning franchise materials, including the Franchise Disclosure Documents

("FDD") and Business Opportunity Rule Disclosure Document ("BO Disclosure Document"). (*Id.* at ¶¶ 59, 136, 148.) Specifically, Achieve claims that Alloy did not provide a FDD or BO Disclosure Document, which Plaintiff alleges must be given to individuals interested in buying a U.S. franchise/business opportunity as part of the pre-sale due diligence process. (*Id.* at ¶¶ 136, 148.)

On May 1, 2018, Defendant accepted Plaintiff's notice of termination. (*Id.* at ¶ 74.)[2]

### D.     Alloy's Alleged Infringement of the Mark

In addition to Alloy's purported misrepresentations, Achieve also claims that on or after May 24, 2016, Alloy rebranded its personal training services, which included the use of an infringing and confusingly similar mark—"STRONGER TOGETHER"[3]—on services identical to the services offered by Plaintiff under Plaintiff's Mark and name. (*Id.* at ¶ 61.) Specifically, upon information and belief, Achieve alleges that Alloy "prominently features, uses, advertises and promotes" the Infringing Mark on its website and various third-party sites in connection with identical services to those offered by Achieve. (*Id.* at ¶ 63.)

### E.     Alloy's Application for Trademark Registrations, Alloy's Petition for Cancellation with the USPTO, and Achieve's Commencement of the Instant Lawsuit

Alloy has applied for four trademark registrations for the Infringing Mark. (*Id.* at ¶ 69.) According to Achieve, however, while these applications are pending, the United States Patent and Trademark Office ("USPTO") has refused registration because of potential confusion with the Mark. (*Id.* at ¶ 70.)

---

[2]     Pursuant to the License Agreement, either party could terminate the agreement without cause by giving the other party one month's notice of termination. (*Id.* at § 3(a).)
[3]     Referred to hereinafter as the "Infringing Mark."

On October 28, 2020, Alloy filed a Petition for Cancellation before the USPTO's Trademark Trial and Appeal Board ("TTAB") regarding the Mark (the "Petition for Cancellation").[4] (O'Connor Cert., Ex. C ("Petition for Cancellation").) Alloy asserted in its Petition for Cancellation that it began using its "STRONGER TOGETHER" mark at least as early as May 1, 2014, in connection with various health club services. (*Id.* at ¶ 3.) Specifically, Count One of Alloy's Petition for Cancellation, seeks to cancel the registration of the Mark, which Mr. Krymis licenses exclusively to Achieve, based on Alloy's priority of usage of its "Stronger Together" mark (at least one year prior) and the likelihood of confusion between the two almost identical marks. (*Id.* at ¶¶ 17-22.) In Count Two of its Petition for Cancellation, Alloy asserts that under the License Agreement, Krymis is not the rightful owner of the Mark, because according to the agreement Krymis and Achieve agreed that they had no right in Alloy's "STRONGER TOGETHER" mark, which would include the substantially similar "STRONG TOGETHER" mark. Further, Alloy contends that as part of the License Agreement, Achieve and Krymis agreed not to compete with Alloy by selling or licensing any personal training fitness system similar to the licensed system or providing related services similar to Alloy's services. (*Id.* at ¶¶ 15, 23-29.)

On May 6, 2021, Achieve commenced an action in the Superior Court of New Jersey, Law Division, Warren County, New Jersey. On June 2, 2021, pursuant to 28 U.S.C. §§ 1331, 1332 and 1441, *et seq.*, Alloy removed this action from the Superior Court of New Jersey, Law Division, Warren County, to the United States District Court, District of New Jersey, on both diversity and federal question grounds.

On July 2, 2021, Achieve filed a motion to remand this matter to the Superior Court of New Jersey (the "Motion to Remand"). (ECF No. 8.) Later that same day, Achieve also filed a

---

[4]     According to Alloy, the TTAB granted Achieve's motion to suspend the proceeding pending final resolution of this action.

motion to amend its Complaint (the "Motion to Amend"), which attached a redlined version of the proposed First Amended Complaint. (ECF No. 9.) On July 9, 2021, Alloy informed the Court that it did not oppose Achieve's Motion to Amend. (ECF No. 10.) Later that day, the Court entered an Order granting Plaintiff leave to file its First Amended Complaint no later than July 16, 2021, and that Defendant's "responsive pleading shall be due thirty (30) days after the First Amended Complaint is filed." (ECF No. 11.) On July 19, 2021, Plaintiff filed the FAC. (ECF No. 15.)

On August 18, 2021, Alloy filed the instant motion to dismiss (ECF No. 18), which Achieve opposed. (ECF No. 29.)

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level,

so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

## III.   DISCUSSION

On this motion, Alloy moves to dismiss Achieve's claims for trademark infringement and unfair competition (Counts One and Two); violation of the NJFPA and NJCFA (Counts Three and Four); and common law fraud (Count Five), rescission (Count Six), and breach of duty of good faith and fair dealing (Count Seven). The Court will address Alloy's arguments, in turn.

### A.   Trademark Infringement and Unfair Competition (Counts One and Two)

As to Counts One and Two, Alloy argues that Achieve's claims for trademark infringement and unfair competition fail because Alloy's use of the alleged Infringing Mark predates Achieve's use of the Mark by at least one year. (Alloy Mov. Br., 33.) In that regard, Alloy highlights that the FAC claims that Achieve first used the Mark on May 31, 2015, while Alloy's website displayed the purported Infringing Mark on May 23, 2014. (*Id.*) (citing FAC, ¶¶ 22, 34.) Moreover, Alloy submits that, by virtue of entering into the License Agreement, it licensed its trademarks to Achieve, including its "STRONGER TOGETHER" mark, and to the extent Achieve acquired any interest in any of those marks, it assigned such interest to Alloy. (*Id.* at 34.) According to Alloy, such an assignment "would include the substantially similar 'Strong Together' mark." (*Id.*) Alloy also argues that Achieve secured U.S. trademark protection of the "STRONG TOGETHER" mark

on January 16, 2018, *see* FAC, ¶ 22, which violated the non-competition provision in the License

Agreement. (*Id.*) (citing O'Connor Cert., License Agreement at § 7.)

The Lanham Act, 15 U.S.C. § 1051, *et seq.*, sets forth the elements a party must prove to

prevail on federal trademark infringement and unfair competition claims. The elements of New

Jersey statutory and common law trademark infringement and unfair competition causes of action

are identical to those under the federal statutory scheme. *See Major League Baseball Promotion*

*Corp. v. Colour–Tex, Inc.*, 729 F. Supp. 1035, 1039 (D.N.J. 1990) (observing that plaintiff must

prove same elements to establish either federal or common law trademark infringement and that

identical facts would support common law unfair competition claim under federal law); *J & J*

*Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp.2d 358, 374 (D.N.J. 2002) (same). Under the

Lanham Act, "a plaintiff must show that (1) it owns the mark at issue; (2) its mark is valid and

legally protectable; and (3) the defendant's use of the mark to identify its goods or services is likely

to create confusion concerning the origin of those goods or services." *Commerce Nat'l Ins. Servs.,*

*Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000). "Likelihood of confusion

exists when consumers viewing the mark would probably assume that the product or service it

represents is associated with the source of a different product or service identified by a similar

mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978) (citing

*James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (3d Cir. 1976)).

Here, the Court finds that Achieve has adequately "stated a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Achieve alleges that it

"owns all right, title and interest in and to the STRONG TOGETHER® trademark and has used it

continuously since at least as early as May 2015 in connection with fitness services." (FAC, ¶ 76.)

Specifically, Achieve alleges that the Mark has been used in connection with several physical

locations, including Strong Together Hackettstown, Strong Together Chester, Strong Together Roxbury, Strong Together Byram, Strong Together Chelsea and Strong Together Pennsylvania. (*Id.* at ¶ 19.) Achieve alleges, however, that beginning on or about May 24, 2016, Alloy rebranded its personal training services, at which time it began using the confusingly similarly "STRONGER TOGETHER" mark. (*Id.* at ¶¶ 61, 64.) According to Achieve, Alloy had knowledge of Achieve's "STRONG TOGETHER" trademark prior to its rebranding, but chose to use the Infringing Mark in connection with "[p]ersonal training services, namely, strength and conditioning training provided by a personal fitness trainer online or in a gym facility, not provided in a medical facility nor for medical purposes." (*Id.* at ¶¶ 41, 62.) Upon information and belief, Achieve also claims that Alloy "prominently features, uses, advertises and promotes" the Infringing Mark on its website and various third-party sites in order to "offer, sell, market, advertise and promote identical services" to Achieve. (*Id.* at ¶ 63.) According to Achieve, by knowingly competing against Achieve and using the confusingly similar Infringing Mark for identical goods and services, Alloy has misappropriated a commercial advantage. (*Id.* at ¶ 97.) The Court finds that these allegations adequately state claims for trademark infringement and unfair competition.

To the extent that Alloy argues that its use of the "STRONGER TOGETHER" mark predated Achieve's Mark, that remains a factual dispute. Indeed, the FAC alleges that although Alloy may have used the mark earlier than Achieve, it did not use it as a trademark and/or did not use it in connection with the same services as Plaintiff.

Accordingly, Alloy's motion to dismiss Achieve's claims for trademark infringement (Count One) and unfair competition (Count Two) is denied.

**B.    New Jersey Franchise Practices Act (Count Three)**

Count Three asserts a violation of the NJFPA, which Alloy argues should be dismissed for two reasons: (1) Achieve does not allege sufficient gross sales to assert a claim under the NJFPA, and (2) Achieve does not allege the required "community of interest" and grant of a "license" to assert a claim under the NJFPA. (Alloy Mov. Br., 17.) Count Three is dismissed as the Court agrees with Alloy's position regarding Achieve's failure to allege sufficient gross sales.

The NJFPA defines a franchise as "a written arrangement ... in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristics, and in which there is a community of interest in the marketing of goods or services...." N.J. Stat. Ann. § 56:10–3(a). Thus, there are two definitional criteria: (1) a "license" permitting use of the franchisor's trade name, and (2) a "community of interest" between the parties. Without these two requirements, there is no NJFPA franchise. *See, e.g., Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div.*, 190 N.J. Super. 153 (App. Div. 1983) (licensed service center was not a franchisee even though it satisfied license requirement because it did not satisfy community of interest requirement); *Cassidy Podell Lynch, Inc. v. SnyderGeneral Corp.*, 944 F.2d 1131 (3d Cir. 1991) (even though distributor had a license, there was no community of interest and, thus, no NJFPA franchise).

In addition, however, even if Plaintiff satisfies these definitional criteria, not all franchises fall under the NJFPA. Indeed, the NJFPA only applies to a franchise:

> (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise[.]

N.J. Stat. Ann. § 56:10–4(a). Thus, to state an NJFPA claim, Plaintiff must show: (1) a place of business within New Jersey, (2) gross sales stemming from the franchise agreement that exceeded $35,000.00 in the 12 months preceding initiation of the lawsuit, and (3) that more than 20% of Plaintiff's gross sales came from the franchise relationship. Failure to satisfy any of these requirements necessitates dismissal of an NJFPA claim. *See, e.g., Am. Estates, Inc. v. Marietta Cellars Inc.*, No. 10–6763, 2011 WL 1560823, at *5 (D.N.J. Apr. 25, 2011) ("to state a claim for a violation of the NJFPA, ... a franchisee must allege that for the appropriate twelve-month period its gross sales of the franchisor's products or services exceeded $35,000. Because the Complaint fails to do so, it fails to state a claim for violation of the NJFPA.").

Here, while Achieve purportedly maintains a place of business in New Jersey, the FAC is completely silent as to gross sales. In fact, Achieve's opposition to Alloy's motion to dismiss provides no rebuttal to dismissal on this basis. Accordingly, based on Achieve's failure to allege gross sales stemming from the franchise agreement that exceeded $35,000.00 in the 12 months preceding initiation of this action, and that more than 20% of Plaintiff's gross sales came from the franchise relationship, Count Three of the FAC is dismissed without prejudice.

### C.   New Jersey Consumer Fraud Act (Count Four) and Common Law Fraud (Count Five)

Counts Four and Five sound in fraud. Specifically, Achieve asserts claims for violation of the NJCFA and common law fraud based on Alloy's purported misrepresentations made in connection with the License Agreement. Alloy argues, however, that Counts Four and Five should be dismissed for several reasons. (Alloy Mov. Br., 26-28.) First, Alloy submits that a "license agreement" does not qualify as "merchandise" under the NJCFA. (*Id.*) Second, Achieve does not allege that Alloy was selling services "to the public," which Alloy argues is required under the NJCFA. (*Id.*) Third, Alloy claims that the licensing of certain personal fitness services between

14

two sophisticated businesses does not qualify for protection under the NJCFA. (*Id.*) Fourth, Alloy explains that while Achieve's claim for violation of the NJCFA is premised on purported misrepresentations in connection with an alleged "franchise" agreement, *i.e.*, Defendant was a "franchisor" and Plaintiff was a "franchisee," such a basis is unfounded because no franchise relationship existed. Put simply, Alloy argues that it could not have failed to properly inform Achieve of a franchise relationship if none existed in the first place. (*Id.*) And, fifth, Alloy argues that because the License Agreement contains an integration clause, the misrepresentations alleged in the FAC cannot form the basis of a claim under the NJCFA or common law fraud. (*Id.*)

The NJCFA prohibits any "act, use or employment by any person of any unconscionable commercial practice … false promise, [or] misrepresentation … in connection with the sale or advertisement of any [service]." N.J. Stat. Ann. § 56:8-2; N.J. Stat. Ann. § 56:8-1(c) (defining "merchandise" to include "service"). Claims under the NJCFA require a plaintiff to allege the following three elements: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div.), *cert. denied*, 178 N.J. 249 (2003). Similarly, to state a claim for common law fraud, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (citation omitted).[5]

---

[5]     Likewise, to adequately plead a claim for negligent misrepresentation, a plaintiff must show: "(1) an incorrect statement, (2) negligently made and (3) justifiably relied on, [which] (4) may be the basis for recovery of damages." *Kuzian v. Electrolux Home Prods., Inc.*, 937 F. Supp. 2d 599, 616 (D.N.J. 2013) (citing *Kaufman v. i-State Corp.*, 754 A.2d 1188, 1196 (2000)), *reconsideration granted on other grounds*, 2013 WL 6865083 (D.N.J. Dec. 30, 2013).

Further, Rule 9(b) imposes a heightened pleading requirement concerning allegations of fraud, including NJCFA claims, over and above that required by Rule 8(a). *Hughes v. Panasonic Consumer Elecs Co.*, No. 10-846, 2011 WL 2976839, at *10 (D.N.J. July 21, 2011). Rule 9(b) requires that a party bringing a fraud claim "state with particularity the circumstances constituting the fraud or mistake." To satisfy Rule 9(b), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Priscaspian Dev. Corp. v. Martucci*, 759 F. App'x 131, 135 (3d Cir. 2019) (internal citations omitted). Stated otherwise, a plaintiff must support its fraud allegations by demonstrating the "who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). However, a plaintiff need not allege every material detail so long as it pleads the circumstances of the fraud with sufficient particularity to place a defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alternation in original) (citation and quotation marks omitted).

First, as it pertains to the NJCFA in particular, it is compulsory that the unlawful conduct be made " 'in connection' with the sale or advertisement of a <u>product or service</u>." *Arcand*, 673 F. Supp 2d at 296-97 (quoting *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (App. Div. 2004)) (emphasis added). Indeed, the NJCFA is intended to protect consumers who purchase goods or services generally sold to the <u>public at large</u>. *See, e.g., Lawmen Supply Co. of New Jersey, Inc. v. Glock, Inc.*, 330 F. Supp. 3d 1020 (D.N.J. 2018). Here, although Achieve accurately notes that the NJCFA's definition of "person" includes business entities and fraud in connection with the sale of services is actionable under the NJCFA, the challenged services, *i.e.*, franchise/training services to gym owners, are not the type generally sold to the general public. *See J & R Ice Cream Corp. v.*

*California Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994) (finding that "it is the character of the transaction rather than the identity of the purchaser which determines if the Consumer Fraud Act is applicable.").

In support of that conclusion, the Court finds the Third Circuit's decision in *J & R Ice Cream Corp.* instructive. In that case, the appeals court considered whether the district court "erred in applying the [NJCFA] to the sale and acquisition of a franchise because: (1) purchasers of a franchise are not the "ordinary consumers" that the Act was intended to protect, and (2) a sale of a franchise does not qualify as either a sale of real estate or a sale of merchandise, the only two types of transactions to which the Act applies." *Id.* at 1271. In finding that purchasers of a franchise are not "ordinary consumers," the Third Circuit noted that the NJCFA was "intended to protect persons engaging in "consumer" transactions, not those acquiring businesses." More specifically, the court concluded that "even where franchises or distributorships are available to the public at large in the same sense as are trucks, boats or computer peripherals," the NJCFA does not apply because "they are businesses, not consumer goods or services." *Id.* at 1274. The court articulated that such "services" are never "purchased for consumption." *Id.* Instead, they are purchased for "the present value of the cash flows they are expected to produce in the future and, [...] bear no resemblance to the commodities and services listed in the statutory definition of "merchandise" or the rules promulgated by the Division of Consumer Affairs." *Id.*

Further, the court's decision in *BOC Group, Inc. v. Lummus Crest Inc.*, 251 N.J. Super. 271, 597 A.2d 1109 (Law Div.1990), which the Third Circuit has discussed favorably, is also persuasive. *See J & R Ice Cream Corp.*, 31 F.3d at 1274. In *BOC Group*, the trial court determined that a corporation that purchased technology and certain support services through an "Engineering Services Agreement and Licensing Agreement" was not protected under the NJCFA. 251 N.J.

17

Super. at 277–79. Recognizing the need for "reasonable limits" on the operation of the NJCFA, the court determined that the technology and services supplied in that case did not come within the definition of "merchandise" because the technology and services (1) were not "available to the public at large and sold in large quantities" or "mass produced" and (2) bore no similarity to the comprehensive definitions of goods and services promulgated by the New Jersey Division of Consumer Affairs pursuant to the NJCFA. *Id.* at 279–81.

Turning to the allegations of the FAC, Achieve does not appear to be a "consumer" of "merchandise" within the meaning of the NJCFA. Like in *J & R Ice Cream Corp.* and *BOC Group*, the service that Achieve contends it "consumed"—access to Alloy's System, which included "(a) System Training materials,[6] (b) System Design Principles, (c) Standard Equipment List, and (d) advice with respect to [fitness] programs"—is neither available to the public at large nor consumable in the context of the NJCFA. (FAC, ¶ 51.) Indeed, no allegations exist in the FAC to suggest that Alloy <u>sells</u> the components of the System to the public at large, either directly or indirectly. Rather, it appears that Alloy only offers the System to a discrete and specialized portion of the public—gym owners.[7] So, while "[i]t is clear that a corporation may qualify as a person under the [NJCFA] when it finds itself in a consumer oriented situation," *BOC Group, Inc.*, 597 A.2d 1109, 1112–13, examples of such instances are easily distinguishable from the instant circumstances. *D'Ercole Sales, Inc. v. Fruehauf Corp.*, 501 A.2d 990, 996–97 (App. Div. 1985) (purchaser of a tow truck); *Perth Amboy Iron Works, Inc. v. American Home Assur. Co.*, 543 A.2d 1020, 1024–25 (App. Div. 1988) (purchaser of a yacht), *aff'd*, 118 N.J. 249, 571 A.2d 294 (1990);

---

[6]    According to the FAC, this includes: an operations and training manual, forms and documents used to support the system, training videos, quarterly workouts, the program design card, an exercise video library, downloadable programs, and video support for program demonstrations. (FAC, ¶ 48.)

[7]    To the extent that the FAC vaguely suggests that the System also includes a workout program that might ultimately be used and consumed by the general public, Achieve does not argue, nor provide any case law to support, the notion that this satisfies the NJCFA.

*Hundred East Credit Corp. v. Eric Schuster Corp.*, 515 A.2d 246, 247–49 (App. Div.) (purchaser of computer peripherals), *certif. denied*, 107 N.J. 60, 61, 526 A.2d 146 (1986).[8] That is because the "services" in those cases are "consumable." In that regard, it is well-settled that products and services that are purchased for consumption or use in the course of business are covered by the NJCFA. *See, e.g., Naprano Iron & Metal*, 79 F. Supp.2d at 509 (finding the purchase of a crane for use in construction covered by the NJCFA); *Hundred East Credit Corp.*, 212 N.J. Super. at 355–57 (NJCFA covered claims by business related to purchase of computer peripherals). On the other hand, goods or services which are never consumed or used in the course of business, such as products purchased at wholesale for resale, franchises, and designs are not covered by the NJCFA. *Cf. J & R Ice Cream Corp*, 31 F.3d at 1274 (finding the sale of franchises not covered by the NJCFA because they "are never purchased for consumption" and "are purchased for the present value of the cash flows they are expected to produce in the future") and *BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super. 271, 278 (Law Div.1990) (finding the NJCFA does not cover the sale of a design because it is merely an "idea"). To reiterate, here, no allegations exist in the FAC to suggest that the System, or any other services provided to Achieve from Alloy, could be "consumed."

Further, even if the FAC alleged that the System was available to the public at large and consumable under the NJCFA, Alloy does not adequately allege unlawful conduct by Achieve to sustain a NJCFA claim, nor does it allege sufficient material misrepresentations to sustain a fraud claim. "Unlawful" conduct prohibited by the NJCFA includes:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false promise, misrepresentation, or the knowing

---

[8]      Moreover, the Court notes that Achieve may not be considered a consumer because, unlike the "poor" and "naive" customers referenced by the New Jersey Appellate Division in *Hundred East Credit Corp.*, 212 N.J. Super. at 355–57, the customer here—Achieve—portrays itself as having a unique business expertise in this particular area, *i.e.*, health and fitness industry.

concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been mislead, deceived or damaged thereby.

N.J. Stat. Ann. § 56:8-2. The NJCFA recognizes three general categories of unlawful conduct: (1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations. *See Solo v. Bed Bath & Beyond, Inc.*, No. 06–1908, 2007 WL 1237825, at *2 (D.N.J. Apr.26, 2007); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). The common denominator underlying all types of unlawful conduct is " '[its] capacity to mislead.' " *Arcand v. Brother Intern. Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (quoting *Cox*, 138 N.J. at 17).

The Court notes that "[p]redictions, promises, and statements about future profitability are typically viewed as falling outside the category of actionable fraud." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 305 (D.N.J. 2020) (citing *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 159 (D.N.J. 2013).) Statements about "future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998) (citing *Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F. Supp. 738, 749–49 (D.N.J. 1979), *aff'd in part, rev'd in part*, 635 F.2d 1081 (3d Cir. 1980)). Additionally, "statements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." *Id.* (citing *Diaz v. Johnson Matthey, Inc.*, 869 F. Supp. 1155, 1165 (D.N.J. 1994)).

Here, the Court finds that some of Alloy's purported misrepresentations were not statements of fact at all, but fall within the category of "vague and ill-defined opinions" about

future events. For example, Achieve generally alleges that Alloy "misrepresented to Plaintiff that the programming would enhance returns, profits, and business results." (FAC, ¶ 139.) As an example, Achieve references only two statements, presumably made by Alloy representatives.[9] First, Achieve alleges that Alloy stated, "I know we can help you create better retention and increase personal training in your Achieve 24 locations with our systems!" (*Id.* at ¶ 129.) Next, Achieve claims that Alloy stated:

> I ran across something that might help you out with memberships at the gyms. I recently got back in contact with an old friend who had run very successful membership drives for me in the past. We had lost contact after I had converted to a training facility but after reconnecting I realized that he might be able to help some of our Alloy clients that have full service gyms. What he does is different than what we do with ProFit. Still love those guys but where they focus on training these guys specialize in general memberships which in turn gives us more people to potentially train.

> I had just installed Alloy in a small full service gym in Sequim Washington that need help with membership and referred my friend's company to them. In the first two weeks of their campaign at this club they've sold over 50 memberships with gross sales of over $25,000 and that was over the 4th of July week! After Labor Day it's a peak time so could do much better at your locations. Their program doesn't work in all markets but I thought I'd let you know since it couldn't hurt to ask them if your clubs might be a good fit. They work strictly on commission and there are no up front fees or risk on your end so in any case if you need a boost in general membership sales it might not hurt to talk to him. If you're interested to see if their program might work at your locations let me know and I'll introduce you.

(*Id.*) In short, these statements contain nothing but anecdotes about other Alloy clients and generalities about the future. Thus, as currently pled, Achieve's allegations relate to returns, profits, and future business results or expectations, which cannot serve as the basis for a fraud claim. *See Alexander*, 991 F. Supp. at 436 ("predictions of the future, which were believed when

---

[9]      The Court notes that while the heightened pleading standard under Rule 9 requires Plaintiff to allege the date, time and place of the purported fraud or "otherwise inject precision or some measure of substantiation into a fraud allegation," these examples are alleged without any context. Indeed, it is unclear from the face of the FAC who made the statements, when the statements were made, or how the statements were communicated to Achieve.

made, cannot serve as a basis for a fraud claim just because they subsequently turn out not to be true.").

Having determined that these statements cannot sustain Achieve's fraud claims, the only purported misrepresentations that remain are those related to branding. In that regard, the FAC alleges simply that "Defendant misrepresented to Plaintiff that Plaintiff would not need to use Defendant's name or brand <u>for success</u>." (FAC, ¶ 137) (emphasis added.)  As an example, the FAC alleges that on October 3, 2016, Alloy communicated the following to Achieve:

> For branding you don't have to use the Alloy branding if you don't want to. We are very careful with our systems so if you do license other facilities in the future those licensees would have to license Alloy directly.

(FAC, ¶¶ 46, 138.)  According to Achieve, this statement also constitutes a misrepresentation based on Alloy's position, in this litigation, that Achieve assigned its trademark and brand to Alloy through the License Agreement.

The Court concludes, however, that this allegation, alone, is insufficient to adequately assert a violation of the NJCFA or common law fraud. First, putting aside Alloy's argument, on this motion, that the License Agreement's integration clause bars the introduction of evidence of extrinsic negotiations,[10] this lone allegation does not comport with the heightened pleading

---

[10]     In general, where a contract contains an integration clause, the parol evidence rule bars the introduction of evidence of extrinsic negotiations or agreements to supplement or vary its terms. There is an exception, however, for evidence of fraud in the inducement; such evidence is not offered to add or change contract terms but to void the contract altogether. *See Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960) ("[P]arol proof of fraud in the inducement is not considered as either additional or substitutionary but rather as indicating that the instrument is, by reason of the fraud, void or voidable."); *Walid v. Yolanda for Irene Couture, Inc.*, 40 A.3d 85, 94 (N.J. Super. Ct. App. Div. 2012) (noting that "extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence rule" where the alleged "misrepresented facts are peculiarly within the misrepresenting party's knowledge"). The alleged fraud, however, must concern a matter not addressed in the agreement; in other words, the subject of the misrepresentation must be extraneous to the agreement. *See Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F. Supp. 2d 788, 795 (D.N.J. 2005) (citing *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1236 (N.J. Super. Ct. App. Div. 1991)). Where, by contrast, misrepresentations made during the course of negotiations are addressed by the terms of the contract, the claim becomes one for breach of contract, not fraudulent inducement. In such a case, the

standard under Rule 9(b). As to the heightened pleading standard, other than the date that this alleged misrepresentation occurred, the FAC does not allege who made the statement; where, or in what medium the statement was made; or provide any other context for Alloy's purported statement related to branding. Second, even if the allegation did include the necessary elements to satisfy the heightened pleading standard, the example provided in the FAC related to branding is innocuous. Indeed, although Achieve alleges that "Defendant misrepresented to Plaintiff that Plaintiff would not need to use Defendant's name or brand <u>for success</u>," the example provided in the FAC makes no such representation. Rather, in this solitary example, Alloy simply states that Achieve is under no obligation to use the Alloy branding at the Achieve facilities. Nothing in the FAC suggests that this statement was deceptive, untrue, or misleading in any way.[11] Without more, the Court cannot find that such barebones, conclusory allegations are sufficient to sustain a fraud claim that requires a heightened pleading standard.

Accordingly, Counts Four and Five are dismissed without prejudice.

### D.    Rescission (Count Six) and Breach of Good Faith and Fair Dealing (Count Seven)

In Count Six, Achieve asserts a claim for rescission of the License Agreement under New Jersey common law. The Court finds that dismissal of Count Six is appropriate because rescission is not a recognized independent cause of action.. *Silva v. Fed. Nat'l Mortgage Corp.*, No. 15-1514, 2015 WL 9460559, at *3 (D.N.J. Dec. 23, 2015) (finding that rescission is not a recognized cause of action under New Jersey or federal law); *Inventory Recovery Corp. v. Gabriel*, No. 11-01604,

---

integration clause will bar the claim. *RNC Systems, Inc. v. Modem Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 454 (D.N.J. 2012).

[11]    The FAC also alleges that when Achieve terminated the Licensing Agreement, Alloy advised that Achieve would need to remove any "Alloy branding" that it previously used. (FAC ¶ 74.) Like the FAC's other allegation related to branding, however, the Court fails to understand how the statement was deceptive.

2012 WL 2990693, at *6 (D.N.J. July 20, 2012) (same); *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. 15-310, 2016 WL 1718100, at *5 (D.N.J. Apr. 29, 2016) (noting that rescission is an equitable remedy and dismissing plaintiff's rescission claim because it was superfluous). Count Six is dismissed with prejudice.

Finally, in Count Seven, Achieve asserts a claim for breach of duty of good faith and fair dealing. To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege that "(1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *Creative Concepts Mfg. Ltd. v. Team Beans LLC*, No. 17-6066, 2018 WL 2002800, at *4 (D.N.J. Apr. 30, 2018); *see also Voorhees v. Tolia*, No. 16-8208, 2022 WL 18024216, at *8 (D.N.J. Dec. 31, 2022).

Here, because the FAC does not allege that Achieve performed under the terms of the License Agreement, or that its performance was somehow excused, the Court finds that Achieve has failed to adequately plead a claim for breach of duty of good faith and fair dealing. Rather, the FAC alleges only that Achieve paid a "start-up" fee of $1,500 for use of the System; however, the FAC is silent as to whether Achieve upheld the other requirements of the Licensing Agreement, including the payment of a $250 monthly fee per location.

Further, even assuming the FAC alleged that Achieve performed its obligations under the Licensing Agreement, Count Seven still should be dismissed because Achieve has not alleged that Alloy's conduct caused it to suffer injury. Specifically, Achieve's good faith and fair dealing claim is based merely on an argument advanced by Alloy before the USPTO in connection with the

Cancellation Proceeding. The FAC alleges that Alloy breached its duty by arguing before the TTAB that under the terms of the License Agreement, Achieve assigned to Alloy all rights in the "STRONGER TOGETHER" Mark, which under applicable law included the right to other marks like Achieve's "STRONG TOGETHER" Mark that are confusingly similar. (FAC, ¶ 160.) Similarly, Achieve alleges that Alloy breached its duty of good faith and fair dealing by arguing before the TTAB that in signing the License Agreement, "Achieve agreed not to compete with Alloy by selling or licensing any personal training fitness system similar to the licensed system or providing related services similar to Petitioner's services." (*Id.*) Putting aside Alloy's contention that an argument before the TTAB is not "conduct" for purposes of adequately alleging a breach of duty of good faith and fair dealing claim, Alloy's argument before the TTAB cannot cause any injury to Plaintiff. In that regard, Alloy is correct that Achieve will only be injured if the argument is valid—in which case it is Achieve's agreement to enter into the License Agreement that would cause injury to Achieve.

Accordingly, Count Seven is dismissed without prejudice.

## IV.   **CONCLUSION**

For the reasons set forth above, Alloy's motion to dismiss is **GRANTED** in part and **DENIED** in part. Specifically, Alloy's motion is denied as to Achieve's claims for trademark infringement (Count One) and unfair competition (Count Two). Alloy's motion to dismiss is granted, however, as to Achieve's claims for violation of the NJFPA (Count Three), violation of the NJCFA (Count Four), fraud (Count Five), rescission (Count Six), and breach of duty of good faith and fair dealing (Count Seven). While Achieve's claim for rescission is dismissed with prejudice, Counts Three, Four, Five, and Seven are dismissed without prejudice.

Achieve is given leave to amend its FAC within 30 days from the date of the accompanying Order, consistent with this Opinion.


Dated: February 28, 2023                              */s/ Georgette Castner*
                                                      Georgette Castner
                                                      U.S. District Judge